Mr. Sebade. Yes, Your Honor. Unusual that the Court gets it right the first time. Thank you very much. My name is Mazin Sebade. May it please the Court, I represent the Appellant Virtual Chart Solutions I or I, which we refer to in the briefs as VCSI. This is a software copyright infringement case. Thankfully, it's not as heavy as the last argument, but still important. And I think it presents some very unusual facts for the Court's consideration in a fact pattern that brings to the fore three issues that happen below. The first issue looks to what seems to be an open issue before this Court as to what is the standard of proof for proving copyright infringement. The Court below ruled that when you have a software copyright, you have to have, or the plaintiff has to have an expert per se, and that there's no other way to be able to prove infringement. We think the Court got it wrong. And in fact, the Court's jurisprudence has long held that you can prove infringement through direct evidence or through circumstantial evidence. And the lower Court's opinion spent a lot of time talking about what the standard of proof for meeting the circumstantial evidence thresholds. Substantial similarity, which then breaks down to the abstraction filtration test. But I think where we land is, in a case where you have direct evidence about copying the entire work, where the entire original is copied, and that is what is now loaded onto the software, or loaded onto the computer of the defendant. That's the general fact pattern we're talking about here, because that's what the evidence that we have says. It would be no different than if someone came forth and said, I took an unlicensed copy of Microsoft Word and loaded it on my laptop. There isn't a question about, were there pieces of Microsoft Word that are not copyrightable? There isn't a question about, did they only copy some of it, such that you have to figure out, was it enough? And there isn't a question as to whether pieces of the Microsoft Word were inputted into a new software program that was then sold on the market. None of those factors, which dominate the case law that this Court generally sees and which dominates the case law that they cited, actually aren't factors in today's case.  Yes, sir. What you're saying, because I'm concerned that what you're saying is that there is not a difference between the element of copying and the element of substantial similarity. I thought our case has said that those are two separate inquiries in this realm. Thank you for raising that, and I think that was what the lower court found when it distinguished the Ninth Circuit case that we cited, which was the range case. This is Bridgman, General Universal Systems from our court. They're from 2003 and 2004. Isn't that the framework that we have to work with, with our precedent? I believe Your Honor is absolutely correct. Those are the elements. What I'm saying, I think, is the evidence meets more than one of the elements. When the evidence shows that they took the whole software program and copied the whole thing, you have now met the element of copying, factual copying, and substantial similarity, because there's complete identity. That's an assertion that's not proof. What is your quote evidence about that? In the case below, actually in a parallel case, the guy who actually did the coding, Mr. Brian Meredith, testified that he did the coding. He was the one who put together the software program, and the way ... I think what he said was when he updated the source code, he made updates, the same updates, to the object code that was loaded on the defendant's system, because they specifically asked him, don't they now have ... It's on page 17 of his transcript. Don't they now have different programs? He said, no. They have the same software. They said, well, did anyone reject one of the updates when the other one accepted it? He said, no. Where I would also go on that is because this was a grant of summary judgment, the inference as to what was meant by that, if there's any ambiguity, should have gone in our favor, and not to the other side, because it's pretty clear, because they come back to that question several times, because ... But you have the burden of proof. I agree we have the burden of proof, Your Honor, but the testimony is pretty clear, because he says it's the same software. He says he's been ... He says he hasn't been updating it since 2014, but he's been troubleshooting it, so he testifies they still have it, that the defendant still has it, and then they still use it. Well, how come you walked away from what Judge Duncan said, that we do require both copying and substantial similarity? So I think where we land is, Your Honor, is the case law that we cite. It's on page eight of our reply. Those cases evaluated this specific fact scenario on how do you meet substantial similarity. Some of the courts said, well, you don't really have to meet it, but some of the courts said it's basically met at the same time, because you now have an identity of not just substantial similarity, you have an identity. That's the Fifth Circuit court. Well, and that's where I ... That's where I opened up with it. I don't think the Fifth Circuit has addressed it one way or the other, and so I think the same evidence should be available to meet both when you have circumstances where there's an identity, at least the testimony is that they took the original, copied it, and loaded it onto the defendant's system and fired it up and used it. I mean, you do have to meet the substantial similarity test. I mean, that's our precedent. Yes. You're pointing to the Meredith testimony to meet that, or at least raise a fact issue, I guess, as to substantial similarity. Yes. Is that right, Meredith? That's correct. Anything else? Yes, Your Honor. When they were ... When the ... We also had a trade secret claim in this case, and when the defendant moved to dismiss or summary judgment on that, the way ... Their first argument was that the software that they have that we're claiming trade secret protection over was licensed to them, and they admitted that that's what's been copyrighted. So they admitted, and that's how they were able to argue copyright preemption, that the trade secret claim, the state trade secret claim, was preempted by the federal copyright claim, and they won in part on that basis. That was in an affidavit. It may have been a declaration by Robert Shields, who is the principal of the defendant, MCT, and that's exactly what he testified, that he knew the documents, that it was in his personal knowledge, and that the very software that we were claiming trade secret protection over was the very software that was copyrighted, and that they had on their system, and so therefore, you don't get two bites of the apple under the law. So you're pointing to a mission by Robert Shields with respect to the trade secret claims? Yes. In the event that, as we argued below, and as we've argued in our briefs, in the event that, well, either way, we think that if it's, we think that either way, not letting, not letting us, or not letting VCSI assert a, excuse me, an expert on infringement, when the trial got moved, we'd also think was error, and that's what we presented as Issue 2. Obviously, Issue 2 gains even more importance if this Court agrees with the lower court that, no, you really needed an expert to show substantial similarity, because that makes it, that makes not allowing an expert in sort of almost a death knell on, on the copyright claim. I don't recall who said this, so you can, you can correct me, but I thought when the expert or something like that, that there was a representation made on your client's side that, well, then we can't prove our case. So that was in July of 2018, and that was a representation that we made, because at the time, we didn't know about the Meredith transcript. We didn't have what we're considering the direct evidence, and we didn't have the admissions at that time, and so that was an, an argument made by a lawyer, it's a legal argument, I think, as we showed in our reply, we don't think that's a judicial admission, but we hadn't seen this, this Meredith, the Meredith transcript coming out of a 202 motion in State Court that, that I wasn't aware of. The circumstances that I took over the case was after the original deadline had been missed, and I just wasn't aware of it, so, you know, once I became aware of it, then obviously we, we incorporated it as we were supposed to. The Groffman, though, of a Rule 16 motion, is you have to show that you couldn't meet the deadline, the original deadline, despite best efforts, and the record is undisputed that . . . You've been litigating for how many years, you being your, your client, have been litigating for how many years at that point? Uh, I think a year. I think the case was filed in 17. I, I wasn't originally . . . What about the case before that? Wasn't there a case before that? Uh, I'm unfamiliar with that case. I think it, I think it was pending a year prior to that, and, and non-suited . . . Well, it seems to me, in a place like Dallas, which touts itself as having a substantial, uh, uh, you know, computer tech, uh, industry, that you could have found an expert within the, because this was a request made after the close of discovery, right? It was not a request made after the close of discovery. It was a request made, uh, after, well, it was a request made after the, after the deadline to first designate an expert. Right. But if I can answer your question, Your Honor, we didn't have the code that an expert could even review by the time that deadline happened. The defendants wouldn't turn over their code until there was a protective order. The protective order was negotiated by my predecessor, and a joint motion for its entry was filed sometime in early April of 2018. It wasn't entered until three or four days before the expert deadline, and the code did not come in, uh, in that period of time. You explained that to the judge? We did. But you could still have hired an expert. We did hire an expert. We did hire an expert. While our motion for, uh, more time was pending, we did hire an expert. That expert did get access to the, to the code. We could have designated the expert, so when we were in front of Judge Mizant, right, about a week before trial, and he moved the trial deadline, that was, that was what I presented, represented to him. We could, we can have an expert disclosure and a, and a report in very short order and . . . Before trial. Well, he'd already moved the trial. So, so at this point, he's basically told us because of a, of a, of a, excuse me, a, a trial he had in, in a criminal lawsuit that our trial wasn't going to go and he was going to extend it indefinitely. He was going to allow the defendant to reassert their summary judgment motion, and I, a couple times said, well, if you're going to move the trial anyway, can we please have a little bit of time? We'll, we'll put forth an expert and that'll resolve sort of this, this, this lingering question. And he told them they could have more time to file a summary judgment even though they'd filed that after the deadline for summary judgments, but didn't allow us to do so. And he didn't go through the Rule 16 factors as to, as to why, to weigh all of them. And I note that just last year, this very panel in a case called LaRocca v. Alvin ISD, which is 21-40043, this panel reversed denial of a Rule 16 motion. There were, again, the judge hadn't gone through the Rule 16 factors to explain why the Rule 16 motion was denied. Their issue was a motion to amend after the deadline, but it's the same factors that apply. So the fact that we weren't allowed to do that and we think was highly prejudicial because the main reason our initial motion had been denied was because it was going to prejudice the other side, because it was going to bump up against the trial date and Judge Mazzant didn't want to move, the trial court didn't want to move the trial. Well now the trial is gone, so the one thing that Rule 16 always says is, you know, can a continuance cure any prejudice? Here obviously it can because the continuance was being granted anyway, had nothing to do with our case. So we think, we, we think it was reversible error for the court not to at least give us the chance to, to, to put in an expert. And the third thing, Your Honor, is in dealing with the, the fee award. We believe the fee was, was punitive and I'd like to highlight three or four brief points. First and foremost, the lower court clearly applied the wrong legal standard. The lower court cited to the Judge Posner cases out of the Seventh Circuit basically saying that when a defendant, when a defendant wins in a copyright case, then there is a strong presumption that they should get attorney's fees. That runs headlong into the Supreme Court's Forgaty and Kurtzang cases as we've cited. Secondly though, the lower court applied the wrong standard by basically reasoning that an unsuccessful copyright claim must have been meritless when filed if it was unsuccessful. The court focused very much on what happened in the case as opposed to looking at what was the state of the evidence at the time that the copyright claim was filed. At the time the copyright claim was filed, we obviously knew, we didn't know about the deposition, but our side actually, obviously knew that the defendant had a copy of our, of our software and that it had been given to them. The fact that we didn't designate an expert on time was a technical default. It was, shouldn't have been translated into a substantive default, especially given the And so if the only reason VCSI didn't designate an expert was not due to the lack of the merits, it's not that there wasn't an expert to go with, then the finding that the copyright claim was frivolous when filed, meritless when filed, or filed in bad faith, we think is not supported by the record and really ignored, ignored that. The court did find that your client failed to engage in meaningful discovery, filed the case, and ceased operations before the lawsuit was filed and pursued the case to interfere with the defendant's business. If I could take those in order, Your Honor. Oh, may I, may I? Well, I'll just throw those out and you can take them up on rebuttal. All right. Thank you, Your Honor. All right. Good morning. Good morning. I'm Chris Ayers here on behalf of MRI Center, sometimes called MCT, I may use it as interchangeably. This is Mr. Kamenak from Surgical Notes, I'll be arguing for the appellees. To me, this case is actually very simple. Do federal courts have the ability to control their dockets and are lower courts required to apply this court's precedent? That's basically it. It's not any more complicated than that, but if the court will indulge me, there is something I want to say. I was brought up believing you treat federal courts with reverence and respect. Every federal judge is entitled to that and there's too much in the public for us as lawyers not to be demonstrating that. Amos Mezant and Carolyn Craven are exceptional judges. To refer to them as the hallmark of arbitrariness, one-sided, unfair, is outrageous. We as lawyers need to do better than that. They wrote pages on the defendant's own responsibility in this case. Just so the court's not mistaken, the defendants come before it in its reply brief saying the same thing they've said all . . . none of this was their fault. Ultimately, the court's going to have to explain to the defendant just like Judge Craven and Judge Mezant did, it is their fault. Issue one is very clear. Judge Duncan, you brought it up plainly and clearly. Yes, as the court referred to it in the Armour case and you're right under the rule of orderliness, you're going to abide by your precedent. It is a third prong that you're required to show substantial similarity. Judge Jones, I did you a disservice in my brief. I block quoted your Bridgemont opinion in pages thirty-five and thirty-six, but I left out the most important part. This is what you said. He tells you in his opening argument that it is an open question yet to be addressed by this court whether you have to show substantial similarity if direct copying is proven, even though it's not in this case. This is what you said, Judge Jones. George contends he need not produce evidence of substantial similarity between the copyrighted and the copyrighted because there is evidence of direct copying. This argument simply misperceives that not all factual copying constitutes legally cognizable copyright infringement. Further, this is what you said, Judge, the law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the two works. And Judge Duncan, you said the same thing in Digital Drilling, your 2000 opinion. Even when there's copying that's been conceded, you still have to undertake a substantial similarity analysis because of the quantitative and qualitative importance of the work to determine if there's a cognizable claim. So, well, I'm grateful that Judge Jones and I have written such good opinions, but, and, so I mean, I think that law, that law is clear, I mean, we can cite other cases for that proposition. What counsel, what Mr. Spidey says is that, well, the Meredith testimony sort of creates fact issues as to both copying and substantial similarity, and I'd like to get your response to that. Can I start with substantial similarity first? Sure. So substantial similarity requires that you put the codes side-by-side to be able to compare them. MCT's code, MRI Center's, my client's code, isn't in the record. It wasn't submitted in the summary judgment record. If you look at, the district court analyzed that as well, and if you look at 2134, you'll see it's nowhere in there. There is no ability to compare the codes side-by-side. That's one problem, and fatal. The other problem the district court brought up is they dumped in 250 pages of their code. Code that they acknowledge is only covered in part and applicable here. This court said it best when it talked about, in Spears Marketing, it's not the trial court's job to sift through the record, and in fact, Judge Mazzant talked about that. We don't know what code they're talking about. We don't know how it compares side-by-side. You can't get there without the two codes in the record, and they're just not. That's that. Now, as to the first, the element, the second element, I guess, of the three-part test of copying, the direct evidence that they propose are admissions by us allegedly, and then Mr. Meredith's testimony. Let's talk about the admissions first. We didn't admit anything from the answer, Your Honor, at record 211 through the pre-trial orders at record 1695 and 1720. Those issues were always denied by us that we had copied anything. From the jump, we said we didn't copy anything. The argument that we had made was that the trade secret cases were preempted under copyright law because they were making the same core allegations. We undertook the analysis under Alcatel, this court's opinion in 1999, to say that is preempted when you make those same allegations. Cases and causes of action may be qualitatively different, but it's the same analysis. That's it. We didn't admit to anything. Those are not judicial admissions of anything, and one need look at the pre-trial order and the answer to see it. Mr. Meredith's testimony is worse. He specifically testified that my clients don't have the source code, don't have the source code. All they have is a compiled code from an earlier license that they bought that they've used to get support on since then, but they don't have the source code, and that's why Judge Mazant said you can't read that, Judge Jones, as you said, you can't read that without stacking inference upon inference upon inference or giving some presumption. You can't get there. That is not evidence of direct copying. So, the fact is, and by the way, Mr. Meredith's deposition in the 2002 petition wasn't in this lawsuit. He was never deposed in this case. He's never testified about that. The deposition they cite was from an investigatory lawsuit in state court in Dallas that was filed a year before they even produced their own code. He hadn't even been asked to analyze it. It was never in there. So for those reasons, the last thing I want to say is this allegation that the court demanded or required an expert is simply false. Can I grab my notebook real quick? The district court opinion at 2664 said, putting aside the issue of whether an expert is required, you didn't prove factual copying. You didn't prove direct copying. You never got there. And so he never addressed that. He didn't require them to have an expert. He didn't require the abstract filtration comparison standard for two reasons. One, they didn't have an expert, and two, there's nothing to abstract, filter, or compare when you don't have the two codes. And shifting to the issue two, if I could, this court has said repeatedly federal courts are in charge of their own docket management. When you get a docket order that sets deadlines, you best abide by them. But before you ever get in the federal courthouse, you better have your ducks in a row as a plaintiff because you're filing your lawsuit under Rule 11, okay? The evidence in this case is they didn't have the ability to produce their code until fifteen months after they filed the lawsuit. This was a spite suit. That's what this was, a hastily put together copyright thrown into federal court and wing it as you go, and you do that at your peril. When you have one copyright in hand, you come in, you can't produce your code, and you miss your expert deadlines, Judge Jungee said this, missed it not once, but twice, twice. You got leniency the first time by an amendment to the scheduling order, and then you missed it again. And then, you only come to the judge asking for an expert, Judge Jungee, you were asking about this, asking for an expert, not because you realized you missed your deadline, but because you're confronted with a motion for summary judgment, and you know your case is going to go in the trash can. That's the procedure that happened here. And then, when you go in front of the magistrate judge, who tells you that you're making, quote, weak attempts under SNW Enterprises, the four-part standard, and lists the litany of things, many of which you mentioned, Judge Jones, and she tells you, but she's denying you leave because you haven't proffered an expert. She doesn't know the name. This is a secret. Today, you're told that they have an expert in hand. We have no name. We have no report. We have no disclosures under Rule 26, no compliance with the scheduling order, and no compliance with the Eastern District Local Rule 26. None of that was given to Judge Craven. Now, when I got an order from a magistrate judge telling me that, and I was going to make my objection and go to the district court, you best believe I would have my expert report in hand when I approach the district court. Five months go by. Still don't produce an expert report when they go in front of Judge Mazon. Still don't produce it at the pretrial conference. That is harmless error at best, if there was any error. You couldn't possibly determine if the denial of an expert was harmful or not because we don't know who he is and what he would say or he or she would say. You have no idea. No proffer under 103, no anything. But yet, we want to sit here and blame the court as being one-sided. No, what the court told you when the court was giving its opinion at the pretrial conference of your actions was, you haven't taken care of your business. I don't understand what we're going to have a trial on here because you don't have an expert, but I'll hear you out and go brief everything, but I'm not going backwards on that. On this second issue, something is very important. Under the Templeton case, you have to press, not intimate, press your arguments via formal objection. You'll look in the pretrial conference, they formally objected to the reinstatement of the motion for summary judgment. Stray statements at a pretrial of, well, it would only be fair if you gave me a chance, that's not a motion. So, here's the issue with number two, issue two. There was a ruling that they do not assign error to by the district court in its original denial of the expert. There's no error assigned to that and there's no motion that followed at the pretrial conference. So without that, there's no preservation. There's no proffer originally, there's no proffer afterwards, there's no preservation. So it's not preserved and even if it were, it's harmless. Now, as to issue three. To suggest that Judge Mezant went rogue and didn't follow the Supreme Court just does not comport with what his opinion says. He cited curtsy. He cited the Fogarty factors. I did Judge Craven when she issued her magistrate's report and recommendations. He knew and cited to, just like she did, the restrictions. Can't treat the parties differently, okay, and we have to go case by case and do an analysis of what's going on in the case. Okay, that was done. This claim that was told to you and put in the briefs that he cited Judge Posner and went off on presumptions, that's not true. The only citation, the only word, the only time presumption is used is in a string citation in which he's talking about after you find objective reasonableness, unreasonableness in this case, that you should look at the factors. He never assigns any weight or anything. The only thing he does give weight to is objective reasonableness or unreasonableness in this case and he gives it, quote, substantial weight. That's what he says at the record at 3139. So there was no application of a presumption. That's false. As to issue three, Judge Jones or Judge Duncan, I'm not sure which of you brought it up, it's a related point but important. There is no challenge here about the findings as to the litigation conduct. It is not challenge or assigned error. And that includes the litany, refusing to engage in discovery. There's a bunch of things put, I hope my brief was clear, about the deemed admissions. He wasn't making findings based off of deemed admissions substantively. He was talking about deemed findings being reflective of apathy towards the litigation process that you would allow deemed admissions fatal to your case to arise. He talked about interference with MCT's business and that, into his words, this lawsuit was to extract a settlement. No depositions were taken. They stopped operating. All their expenses were litigation. Now before we get off of that, I want to ask you to look at their reply brief at page 23. In that they say, this case was only worth a few hundred thousand dollars, so that's why we chose not to engage in discovery or spend money on it. That's their reply to you. Here's a thought. If that's your standard, that you don't want to spend money and do the work, don't file a lawsuit in federal court. That's my practice tip for the day. As to the substantive objection that Judge Mazant looked at the wrong, that he's not allowed to look at litigation conduct, that flies directly in the teeth of Kurtzing. The Supreme Court, 579 U.S. 207, specifically states that the best thing that a district judge can do is analyze fees and costs and shifting at the conclusion of the case because it's quote, easily assessing the conduct and that the merits and objective reasonableness and all the factors are closely related to the merits. That's just not accurate. That's not what the Supreme Court said. And then, under the Fogarty factors, the court analyzed each one of those. It found frivolousness. It found poor motivation. It found objective unreasonableness. It said that VCSI had failed to come forward with a modicum of evidence on many elements. That's what it said at record 3142. Judge Jones, that's right. It is their burden. And when it's your burden, under summary judgment, you have to bring forward the evidence. You don't shift it to other people. That was not done. The court also noted an objective unreasonableness that all of the positions were rejected and it flew directly in the teeth of this court's precedent. No new arguments were brought from the magistrate to the district court. All of those, no prima facie evidence showed objectively weak arguments. Now, as to the compensation and deterrence factors, the court found, quote, numerous flaws in the substance and execution that the plaintiff did not seek to redress. It found, from a deterrence perspective, that VCSI had done nothing in the case for a year. It had not sought an expert. It had missed its deadlines. It did not produce its code. It produced it, by the way, in a FaceTime settlement discussion. Well, let me just ask you a question. I know they didn't really challenge this, but how did it cost your client $379,000 if they weren't doing anything? I don't . . . I am not trial counsel, but I will tell you that the magistrate judge analyzed the fees. You're correct. But, that is not the amount of the fees of both VCSI and surgical notes is not challenged. I don't know what went into all of the underlying work, but what I do know is this, Judge Jones. The magistrate judge looked at the fees and she cut them back. That award was cut back substantially by the magistrate judge, so you may have brought up exactly what was going through her mind and she chopped the fees back. But as to here, the amount of the fees is not challenged for VCSI or surgical notes. As to the compensation element, the court also, the district court mentioned the fact that compensation is necessary under copyright cases to protect the technology and art, and deterrence is necessary to stop interim lawsuits, which is what this is. So, to me, what the Fogarty factors and Kurtzing say is the court analyzes the five factors, but none of them is case is positive, but objectively unreasonableness and behavior is to be given significant weight. Well, here, the district court found, check the box of all of the above. It found objective unreasonableness. It found frivolousness. It found motivation and it found deterrence was necessary as well as compensation. And to wrap up here, I want to say something. This is not an accident or a mistake. When a district court stripes you for personal animus and you file on the first page of your brief accusing my client's officer of being a criminal, you didn't get the message. When you claim that codes are relevant in a copyright case, you didn't get the message. And when you blame judges as opposed to accepting your own personal responsibility, you get the judgment that's coming to you. Thank you, Your Honors. All right, sir. Mr. Sebade, rebuttal. Thank you, Your Honor. Were you the trial lawyer? I was after the deadline passed. I started in the case towards the end of June when the prior counsel withdrew for personal reasons, had to leave the firm. And so, we got his whole docket, not just this case because there were, obviously, responsibilities. And with that, that actually segues into a timeline fallacy that you just heard. The motion to amend . . . excuse me, the motion for more time to designate the expert preceded the summary judgment motion on the trade secret claim. So, one did not trigger the other. There's a lot of accusations about our intentions that were made in that past argument that I feel the need to push back on somewhat, if not a lot, but I don't have that much time. So, I want to point out that that's not the case. The other point is the code, our code, was produced to them when they asked for it, which was in the fall of 2018. There wasn't a, we didn't produce it in time. It wasn't asked, they didn't ask to come and look at it. The way this normally works is you come to a site to look at the code. It's not produced, the actual source code. It's not produced, you know, in open. Plus, they actually had the copyrighted source code, you know, that was part of the copyright. So, if they wanted to come in and look at the, excuse me, the object code, which is not on a system, you have to come in and look at it. Same with their object code. They wouldn't produce it to us in paper. We had to send an expert to their site to look at it on their system. So, the idea that you're going to put up a bunch of zeros and ones, or anyone's going to put up in any software code, copyright case, a bunch of zeros and one and let a jury look at it and say it's the same or different, is a little bit form over substance at this point. That argument came out of the analysis of Your Honor's case, the Bridgemon case, which they quote extensively. I would draw the Court's attention to Your Honor's case in two ways. Number one, in footnote eight, Judge Jones, you specifically said, yeah, these are different elements, factual copying and substantial similarity, but they can be met with the same evidence, which is the point I made in my opening. The fact that here, which you didn't have in Bridgemon, here you have an accusation that the whole code was copied over is different than the accusations in Bridgemon. So, when he's quoting from Bridgemon, you're dealing with the facts in Bridgemon, which is that one guy's copyrighted some software, couldn't even produce the code that he copyrighted, which is not true of our case, but then he wasn't accusing them of having wholesale copied it. What he was accusing the defendant of doing is taking some of that code through a license and creating their own software and selling it. So, there wasn't an accusation that the entire code was copied over. There wasn't even any testimony that that happened. All his testimony was, was, well, they copied my stuff. And this court correctly said, well, that's not enough because what parts were copied? Well, in this case, we have an answer. Our allegation and the testimony that we have is that the whole thing was copied. And in fact, when he comes, when, when counsel comes and tells you, well, look at the record because our motion for summary judgment on the trade secret case was only on the allegations, that's not true. It was a summary judgment motion. The person in charge of the defendant, MCT, which is Robert Shields, puts in a declaration or affidavit. I don't remember which one it was, where he swears up the documents and says, I'm, I have personal knowledge of all this. We, the code they're copywriting is the code we received. And we received it before there was a confidential relationship. So therefore, it can't be their end. And then they argue preemption. Those are the two arguments that they made. And it all was predicated on their admission, their acceptance of the fact that the code. You didn't argue judicial admission in your, you're taking that essentially as a judicial admission. I believe we did raise that in our, in our, in our opening brief, Your Honor, that, that we considered it a judicial admission. We definitely argued it below for, for the same premise. That, that was, that they, they can't back up. That was a, a, an argument of fact. I believe we also raised it in our reply. But I know we, I know we presented it. Yeah, and they were arguing, I mean, that was a preemption case, right? That, that was, that was one claim that they moved to dismiss in, in our case. And we're not appealing the dismissal of that claim, but the fact that they put evidence in the record where they admitted, to get rid of that claim, they had to admit that the code that they had is the same code we copyrighted, and it's the same code that we're claiming trade secret, they had to admit those facts to get summary judgment, and they did admit them, and, and, and it is part of the, part of the appellate record. So, I think we see some major distinctions between the facts in this case and the Bridgemont case. Last year, Your Honor, on the, on the how hard were we supposed to have litigated this, this claim, there's no evidence as, in the actual record, as to how much was or wasn't litigated. We requested documents, we requested the code. We had the deposition of the main guy once, once the deposition time came around. There's no testimony, there's no standard in this court or in this circuit, that says, well, here's how much you have to litigate before we think you filed a frivolous claim. It's a pretty simple case. It was going to be dependent on, on the code, on the comparison of the code. Which you never offered into the record, the side-by-side comparison. Your Honor, we had the, the testimony, and obviously, normally that, that type of side-by-side is presented by, excuse me, is presented by an expert. But in this case, because we had the guy who actually did the copying, said they moved the whole thing over, we would suppo-, we would present that the side-by-side at that point would be, would be cumulative form over substance and, and, and, and this. Well, that's all very well and good, but that's not what our cases say. Thank you, Your Honor. Thank you for your time. All right. We're in recess until 9 o'clock tomorrow morning.